## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| WANETA WILLIS, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | CLASS ACTION COMPLAINT |
| v. | JURY TRIAL DEMANDED |
| BEST BUY CO., INC., | |
| Defendant. | |

## CLASS ACTION COMPLAINT

Plaintiff Waneta Willis ("**Plaintiff**"), on behalf of herself and all others similarly situated, brings this class action against Defendant Best Buy Co., Inc. ("**Best Buy**" or "**Defendant**") and alleges on personal knowledge, investigation of counsel, and information and belief as follows:

## INTRODUCTION

1.      This is a nationwide class action brought by Plaintiff on behalf of herself and other similarly situated consumers who purchased 6-quart and/or 8-quart Insignia Multi-Function Pressure Cooker with model numbers NS-MC60SS8, NS-MC60SS9, NS-MC60SS9-C, NS-MC80SS9 and NS-MC80SS9-C, and/or who purchased the inner cooker pots with model numbers NS-MCRP6NS9 and NS-MCRP6SS9 (collectively, the

"**Noticed Products**"[1]) for personal or household use and not for resale ("**Class**"[2] or "**Class Members**").

2.      Insignia is a Best Buy brand.  Best Buy designs, manufactures, markets, distributes, and sells consumer electronics and kitchen products nationwide, including the Insignia Multi-Function Pressure Cooker that is the subject of this litigation.

3.       Best Buy sells its products, including these pressure cookers, online and at 978 brick-and-mortar stores throughout the United States.

4.      On October 26, 2023, the U.S. Consumer Product Safety Commission ("CPSC") announced a recall of approximately 930,000 of the Noticed Products because the inner pots have "incorrect volume markings."[3] As a result, hot foods and liquids can be "ejected" when the pressure cooker is vented or opened, which presents a burn hazard to consumers.[4] The Insignia Pressure Cookers were sold at Best Buy stores nationwide and online at www.bestbuy.com and www.amazon.com from October 2017 through June 2023 for between $50 and $120.[5]

5.      By the time the recall was issued, Best Buy had received 31 reports of incidents in which the contents of the pressure cooker were expelled under pressure,

---

[1] Plaintiff reserves the right to amend or modify the definition of the Noticed Products based on information learned in discovery and further investigation.
[2] The precise definition of the Class is found below. Plaintiff reserves the right to amend or modify the definition of the Class based on information learned in discovery and further investigation.
[3] https://www.cpsc.gov/Recalls/2024/Best-Buy-Recalls-Insignia-Pressure-Cookers-Due-to-Burn-Hazard#:~:text=This%20recall%20involves%20Insignia%20Multi,%2D%20and%20eight%2Dquart%20capacity. (last accessed January 10, 2024).
[4] *Id.*
[5] *See fn 3.*

2

including 17 reports of burn injuries, some of which involved second-degree and severe burns.[6]

6.      In its Recall Notice, Best Buy advises that consumers should immediately stop using the recalled pressure cookers and register to receive a replacement of the inner pot and floating locking valve for signaling pressure.[7]  To register, a consumer must register the model and serial number of their pressure cooker, take and upload a photograph confirming that they indeed possess the pressure cooker, and affirm that they will dispose of the inner pot according to local guidelines and requirements.[8]

7.      Nowhere in the Recall Notice does Best Buy advise that the replacement inner pot holds substantially less volume than the pot they purchased. Therefore, to make their pressure cookers functionally safe for household use, consumers are forced to accept a replacement pot with less volume than what they purchased.

8.      Best Buy also provides in its Recall Notice that "Best Buy Stores will not provide credits, refunds, or replacement kits for recalled pressure cookers returned to stores," thereby eliminating a consumers' ability to elect a refund should they not want to accept a smaller pot than that which they purchased.

9.      As a result of Defendant's misconduct, misrepresentations and omissions, Plaintiff and putative Class Members have suffered injury in fact, including economic damages.

---

[6] *See fn. 3.*
[7] https://www.recallrtr.com/pc (last accessed January 10, 2024).
[8] *Id.*

10.     Plaintiff and the Class bring this suit for economic damages they sustained as a result. Given the massive quantities of the Noticed Products sold nationwide, this class action is the proper vehicle for addressing Defendant's misconduct and attaining needed relief for those affected.

## PARTIES

11.     Plaintiff Waneta Willis is and was at all times relevant to this matter a resident of the State of Illinois residing in Chicago Ridge in the county of Cook. Plaintiff is a citizen of Illinois.

12.     Defendant Best Buy Co., Inc. is a Minnesota corporation, having a principal place of business at 7601 Penn Avenue, South Richfield, MN 55423. At all relevant times hereto, Defendant has designed, built, manufactured, marketed, distributed, promoted, and/or marketed and sold the Noticed Products nationwide, including in Minnesota.

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d), the Class Action Fairness Act of 2005 ("CAFA"), because (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one member of the class and defendant are citizens of different States. This court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

14.     This Court has personal jurisdiction over Defendant pursuant to 18 U.S.C. §§ 1965(b) & (d) because Defendant maintains its principal place of business in, and is thus a resident of, this State, maintains minimum contacts with the United States and this

State, and intentionally avails itself of the laws of the United States and this State by conducting a substantial amount of business in Minnesota. On information and belief, Defendant manufactures, distributes, and markets the Noticed Products in Minnesota. At least in part because of Defendant's misconduct as alleged in this lawsuit, the Noticed Products were sold to and purchased by consumers in this State. For these same reasons, venue properly lies in this District and vicinage pursuant to 28 U.S.C. §§ 1391(a), (b), and (c).

## COMMON FACTUAL ALLEGATIONS

15.    Best Buy claims to "enrich lives through technology" by combining "technology and a human touch to meet our customers' everyday needs […]".[9]  Best Buy does so through its six categories of revenue-generating products and services, which include computing and mobile phones, consumer electronics, entertainment, services, large and small appliances, and other assorted products.[10]

16.    Specifically, through its Insignia brand, Best Buy developed, marketed, and sold a variety of 6-quart and 8-quart Insignia Multi-Function Pressure Cookers (Model Nos. NS-MC60SS8, NS-MC60SS9, NS-MC60SS9-C, NS-MC80SS9, and NS-MC80SS9-C) and 6-quart inner cooker pots (Model Nos. NS-MCRP6NS9 and NS-MCRP6SS9) during the period October 2017 through June 2023 (the Noticed Products).

---

[9] https://s2.q4cdn.com/785564492/files/doc_financials/2023/ar/Best-Buy-FY23-Annual-Report.pdf (last accessed January 10, 2024); https://corporate.bestbuy.com/about-best-buy/ (last accessed January 10, 2024).
[10] Id.

17.    Best Buy provides a User Guide with each of the Noticed Products, which states that the Insignia Multi-Function Pressure Cooker purchased "represents the state of the art in multi-function pressure cooker design and is designed for reliable and trouble-free performance."[11]

18.    The User Guide includes specific instructions for filling the pot, and explicitly directs consumers: "Do not overfill the inner pot. Do not exceed the Max marking which applies to solids and liquids combined."[12]

19.    The Max marking on the inner pots as sold, however, is marked at an unsafe level. Accordingly, they are designed to be overfilled.

A.    **The Pressure Cookers Are Dangerous**

20.    The Noticed Products have incorrect volume markings on the inner pots, which can lead a consumer to fill the pot beyond a safe level, causing hot foods and liquids to be ejected when the pressure cooker is vented using the quick release method or opened while its contents are pressurized. This poses a burn hazard to consumers and, indeed, at the time Best Buy issued its Safety Recall it was already aware of 31 injuries, 17 of which were burn injuries.[13]  On or about October 26, 2023, the U.S. Consumer Product Safety

---

[11] NS-MC60SS9 User Manual, p. 2, *available at*: https://www.manualslib.com/manual/2262546/Insignia-Ns-Mc60ss9.html?page=2; NS-MC80SS9 User Manual, p. 2 https://www.manualslib.com/manual/1530772/Insignia-Ns-Mc80ss9.html?page=2

[12] *Id*. at p. 16.

[13] https://www.cpsc.gov/Recalls/2024/Best-Buy-Recalls-Insignia-Pressure-Cookers-Due-to-Burn-Hazard#:~:text=This%20recall%20involves%20Insignia%20Multi,%2D%20and%20eight%2Dquart%20capacity.(last accessed January 10, 2024).

Commission announced a Safety Recall for the Insignia Multi-Function Pressure Cookers and inner cooker pots due to the burn hazard that they pose to consumers.

21.    The Noticed Products include:

a.    the Insignia 6-Quart Multi-Function Pressure Cooker, Model No. NS-MC60SS8;

b.    The Insignia 6-Quart Multi-Function Pressure Cooker, Model No. NS-MC60SS9;

c.    The Insignia 6-Quart Multi-Function Pressure Cooker, Model No. NS-MC60SS9-C.  A picture of the Insignia 6-quart Multicookers is pictured below:



d.    The Insignia 8-Quart Multi-Function Pressure Cooker, Model No. NS-MC80SS9;

e.    The Insignia 8-Quart Multi-Function Pressure Cooker, Model No. NS-MC80SS9-C.  A picture of the Insignia 8-quart Multicookers is pictured below:



    f.   The Insignia 6-Quart Cooker Pot Insert, Model No. NS-MCRP6NS9;

The Insignia 6-Quart Cooker Pot Insert, Model No. NS-MCRP6SS9.

A picture of the cooker pot inserts is below[14]:



22.    The manufacturing defect renders the Noticed Products unfit for the ordinary

purpose for which they are used, which is safe and reliable meal preparation and cooking.

---

[14] All images of the Noticed Products are obtained from Best Buy's landing page for the Insignia Multi-Function Pressure Cooker Recall, which lists these items as the recalled Pressure Cookers and recalled inner cooker pots. https://www.recallrtr.com/pc (last accessed January 10, 2024).

**B.**     **The Injury Risks to Owners and Operators Associated with the Use of the Noticed Products Renders Them Un-useable**

23.     As a result of the injury risks to operators associated with the use of the Noticed Products, by Defendant's own admission in its Recall Notice, the Noticed Products have been rendered entirely worthless.

24.     Specifically, Defendant's recall notice states that "[i]f you have a recalled pressure cooker, please immediately stop using it and register to receive a free replacement of the inner pot and floating locking valve for signaling pressure."[15]

25.     Best Buy also provides in its Recall Notice that "Best Buy Stores will not provide credits, refunds, or replacement kits for recalled pressure cookers returned to stores," thereby eliminating a consumers' ability to elect a refund for the dangerous pressure cooker.

26.     Therefore, the Noticed Products are worthless because they cannot be used without risk of serious injury.

**C.**     **The Recall Provides Consumers With Less Than What They Purchased**

27.     The only choice offered to consumers by Best Buy is to participate in a recall to receive a free replacement inner pot and floating lock valve. However, what Best Buy does not disclose in its Recall Notice and what consumers are not made aware of until they receive their free replacement pot is that the replacement inner pot holds substantially less volume than the pot initially purchased.

---

[15] https://www.recallrtr.com/pc (last accessed January 10, 2024).

28.    In order to remedy the defect with these dangerous pressure cookers, Best Buy is offering consumers a replacement pot with a lower "Max Fill" line. In other words, the consumer is provided with an inner pot that holds less than the one they purchased. For example, the replacement pot for the 8-Quart Multi-Function Pressure Cooker holds 2 ¾ cups *less* than the original inner pot when filled to the max fill line. The 6-Quart Multi-Function Pressure Cooker also holds proportionately less. As a result, through Best Buy's recall, the consumer is left with a pressure cooker that holds less than what they started with.

29.    Thus, due to Defendant's conduct in connection with the recall and repair, Plaintiff and Class Members paid a price premium and sustained economic injuries.

**D.    Plaintiff Waneta Willis**

30.    Plaintiff purchased the Insignia 8-quart pressure Model No. NS-MC80SS9 multi-function pressure cooker from a Best Buy store located in Burbank, Illinois in October 2021 for approximately $100.00.

31.    Plaintiff wanted to purchase a safe, easy to use 8-quart pressure cooker for her home use.

32.    Before purchasing the Noticed Product, Plaintiff Willis reviewed information about the Noticed Product on the Noticed Product's packaging and labeling, including the size of the product.

33.    Defendant did not include on its packaging and labeling that the product contained misinformation regarding the maximum safe fill line for the inner cooker pots.

34.     Plaintiff relied on Defendant's omissions in purchasing Defendant's Noticed Product.

35.     Plaintiff also relied on Defendant's misrepresentations in purchasing Defendant's Noticed Product.

36.     Plaintiff has stopped using the Noticed Product because Plaintiff has been advised that it is unsafe for use and that it should not be used.  Accordingly, the Noticed Product is worthless.

37.     Plaintiff participated in the recall, submitting her request for a replacement inner pot and other repair parts in or about January 2024. In or about March 2024, Plaintiff received her replacement inner pot and repair parts from Defendant, and indeed the replacement pot Defendant provided holds less than the pot she originally purchased.

38.     Plaintiff did not receive the benefit of her bargain because in order to use Defendant's Noticed Product safely, Plaintiff has to use something smaller than that which she paid for.

39.     Had Plaintiff known or otherwise been made aware of the defect in the Noticed Product, she would not have purchased it or would have paid significantly less for it. At a minimum, due to Defendant's omission of the manufacturing defect and replacement with a smaller inner pot, Plaintiff paid a price premium for the Noticed Product, which she would not have paid had she known the truth.

40.     As a result of Defendant's conduct, Plaintiff has suffered economic damages because the Noticed Product that she purchased is now worthless or substantially diminished in value.

**ESTOPPEL FROM PLEADING AND
TOLLING OF APPLICABLE STATUTES OF LIMITATIONS**

41.     Plaintiff and the members of the Class had no way of knowing about Defendant's conduct concerning the safety risks associated with the use of the Noticed Products, nor did they have any way of knowing about Defendant's conduct concerning the issuance of a smaller replacement pot until completing the recall process.

42.     Prior to the recall, neither Plaintiff nor any other members of the Class, through the exercise of reasonable care, could have discovered the conduct by Defendant alleged herein. Further, Plaintiff and members of the Class did not discover and did not know facts that would have caused a reasonable person to suspect that Defendant was engaged in the conduct alleged herein. For these reasons, all applicable statutes of limitation have been tolled by the discovery rule concerning claims asserted by Plaintiff and the Class.

43.     Further, by failing to provide notice of the risks of malfunction or injury associated with the continued use of the Noticed products, Defendant concealed its conduct and the existence of the claims asserted herein from Plaintiff and the Class members.

44.     In addition, by failing to disclose that the replacement inner pot offered would hold less volume than the pot purchased by consumers, Defendant concealed its conduct and the existence of the claims asserted herein from Plaintiff and the Class members.

45.     Upon information and belief, Defendant intended its acts to conceal the facts and claims from Plaintiff and Class members. Plaintiff and Class members were unaware

of the facts alleged herein without any fault or lack of diligence on their part and could not have reasonably discovered Defendant's conduct. For this reason, any statute of limitations that otherwise may apply to the claims of Plaintiff or Class members should be tolled.

46.     As a factual matter, Plaintiff did not learn about the manufacturing defect and injury risks until just prior to filing suit.  Moreover, certain of Plaintiff's claims did not arise until she received her inner replacement inner pot.  Once Plaintiff learned of it, she promptly acted to preserve her rights, filing this action. Defendant is estopped from asserting any statute of limitation defense that might otherwise apply to the claims asserted herein.

## <u>CLASS ACTION ALLEGATIONS</u>

47.     Plaintiff brings this action on behalf of herself and the following Classes pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure. Specifically, the Class is defined as:

> **National Class:**  All persons in the United States who purchased the Noticed Products for personal use and not for resale during the Class Period.

> **Sub-Class:**  All persons in the United States who purchased the Noticed Products for personal use and not for resale and who received a replacement inner pot through the Best Buy recall during the Class Period.

In the alternative, Plaintiff brings this action on behalf of the following State Sub-Classes:

> **Multi-State Class (Implied Warranty Non-Privity) ("Multi-State Implied Warranty Class"):** All persons who purchased the Noticed Products for personal use and not for resale during the Class Period in the following States: Alaska; Arkansas; California; Colorado; Connecticut; Delaware;

District of Columbia; Florida; Hawaii; Indiana; Kansas; Louisiana; Maine; Maryland; Massachusetts; Michigan; Minnesota; Mississippi; Missouri; Montana; Nebraska; Nevada; New Hampshire; New Jersey; New Mexico; North Dakota; Ohio; Oklahoma; Pennsylvania; Rhode Island; South Carolina; South Dakota; Texas; Utah; Vermont; Virginia; West Virginia; and Wyoming.

**Multi-State Sub-Class (Implied Warranty Non-Privity) ("Multi-State Implied Warranty Sub-Class):**

All persons who purchased the Noticed Products for personal use and not for resale and who received a replacement inner pot through the Best Buy recall during the Class Period in the following States: Alaska; Arkansas; California; Colorado; Connecticut; Delaware; District of Columbia; Florida; Hawaii; Indiana; Kansas; Louisiana; Maine; Maryland; Massachusetts; Michigan; Minnesota; Mississippi; Missouri; Montana; Nebraska; Nevada; New Hampshire; New Jersey; New Mexico; North Dakota; Ohio; Oklahoma; Pennsylvania; Rhode Island; South Carolina; South Dakota; Texas; Utah; Vermont; Virginia; West Virginia; and Wyoming.

and

**Multi-State Class (Express Warranty) ("Multi-State Express Warranty Class"):** All persons who purchased the Noticed Products for personal use and not for resale during the Class Period in the following States: California, Florida, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, and Washington.

**Multi-State Sub-Class (Express Warranty) ("Multi-State Express Warranty Sub-Class"):** All persons who purchased the Noticed Products for personal use and not for resale and who received a replacement inner pot through the Best Buy recall during the Class Period during the Class Period in the following States: California, Florida, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, and Washington.

and

14

**Illinois Class**: All persons in Illinois who purchased the Noticed Products for personal use and not for resale during the Class Period.

**Illinois Sub-Class:** All persons in Illinois who purchased the Noticed Products for personal use and not for resale and who received a replacement inner pot through the Best Buy recall during the Class Period.

48.     Excluded from the Classes and Sub-classes are (a) any officers, directors or employees, or immediate family members of the officers, directors, or employees of the Defendant or any entity in which the Defendant has a controlling interest, (b) any legal counsel or employee of legal counsel for the Defendant, and (c) the presiding Judge in this lawsuit, as well as the Judge's staff and their immediate family members. The "Class Period" begins on the date established by the Court's determination of any applicable statute of limitations, after consideration of any tolling, discovery, concealment, and accrual issues, and ends on the date of entry of judgment.

49.     Plaintiff reserves the right to amend the definition of the Classes and Sub-classes if discovery or further investigation reveals that the Classes and Sub-classes should be expanded or otherwise modified.

50.     **Numerosity.** Class and Sub-class Members are so numerous and geographically dispersed that joinder of all Class and Sub-class Members is impracticable. While the exact number of Class and Sub-class Members remains unknown at this time, upon information and belief, there are thousands, if not hundreds of thousands, of putative Class and Sub-class Members.[16] Moreover, the number of members of the Classes and Sub-

---

[16] According to the CPSC Notice, nearly 930,000 products were affected by the recall. *See*

classes may be ascertained from Defendant's books and records. Class and Sub-class Members may be notified of the pendency of this action by mail and/or electronic mail, which can be supplemented if deemed necessary or appropriate by the Court with published notice.

51.    **Predominance of Common Questions of Law and Fact.** Common questions of law and fact exist for all Class and Sub-class Members and predominate over any questions affecting only individual Class and Sub-class Members. These common legal and factual questions include, but are not limited to, the following:

    a.    Whether the Noticed Products contain the defect alleged herein;

    b.    Whether Defendant failed to appropriately warn Plaintiff and the Classes and Sub-classes of the damage or injury that could result from the use of the Noticed Products;

    c.    Whether Defendant failed to disclose to Plaintiff and the Classes and Sub-classes that the replacement inner pot would hold less volume than the pot they purchased;

    d.    Whether Defendant had actual or imputed knowledge of the defect but did not disclose it to Plaintiff and the Classes and Sub-classes.

    e.    Whether Defendant promoted the Noticed Products with false or misleading statements of fact and material omissions;

    f.    Whether Defendant's marketing, advertising, packaging, labeling, and/or other promotional materials for the Noticed Products are deceptive, unfair, or misleading;

    g.    Whether Defendant's actions and omissions violate Illinois law;

    h.    Whether Defendant's actions and omissions violate Minnesota law;

---

cpsc.gov/Recalls/2024/Best-Buy-Recalls-Insignia-Pressure-Cookers-Due-to-Burn-Hazard    (last accessed January 10, 2024).

i.  Whether Defendant's conduct violates public policy;

j.  Whether Plaintiff and putative members of the Classes and Sub-classes have suffered an ascertainable loss of monies or property or other value as a result of Defendant's acts and omissions of material facts;

k.  Whether Defendant was unjustly enriched at the expense of Plaintiff and members of the putative Classes and Sub-classes in connection with selling the Noticed Products;

l.  Whether Plaintiff and members of the putative Classes and Sub-classes are entitled to monetary damages and, if so, the nature of such relief; and

m.  Whether Plaintiff and members of the putative Classes and Sub-classes are entitled to equitable, declaratory, or injunctive relief and, if so, the nature of such relief.

52.    **Typicality.** Plaintiff's claims are typical of those of the absent Class and Sub-class Members in that Plaintiff, and the Class and Sub-class Members each purchased and used the Noticed Products, and each sustained damages arising from Defendant's wrongful conduct, as alleged more fully herein. Plaintiff shares the aforementioned facts and legal claims or questions with putative members of the Classes and Sub-classes. Plaintiff and all members of the putative Classes and Sub-classes have been similarly affected by Defendant's common course of conduct alleged herein. Plaintiff and all members of the putative Class and Sub-classes sustained monetary and economic injuries including, but not limited to, ascertainable loss arising out of Defendant's deceptive omissions regarding the volume held by the replacement inner pot.

53.    **Adequacy.** Plaintiff will fairly and adequately represent and protect the interests of the members of the putative Classes and Sub-classes. Plaintiff has retained counsel with substantial experience in handling complex class action litigation, including

complex questions that arise in this type of consumer protection litigation. Further, Plaintiff and her counsel are committed to the vigorous prosecution of this action. Plaintiff has no conflicts of interest or interests adverse to those of putative Classes and Sub-classes.

54.    **Insufficiency of Separate Actions.** Absent a class action, Plaintiff and members of the Classes and Sub-classes will continue to suffer the harm described herein, for which they would have no remedy. Even if individual consumers could bring separate actions, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated consumers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendant.

55.    **Injunctive Relief.** Defendant has acted or refused to act on grounds generally applicable to Plaintiff and all Members of the Classes and Sub-classes, thereby making appropriate final injunctive relief, as described below, concerning the members of the Classes and Sub-classes as a whole.

56.    **Superiority.** A class action is superior to any other available methods for the fair and efficient adjudication of the present controversy for at least the following reasons:

    a.  The damages suffered by each individual member of the putative Classes and Sub-classes do not justify the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct;

    b.  Even if individual members of the Classes and Sub-classes had the resources to pursue individual litigation, it would be unduly

18

burdensome to the courts in which the individual litigation would proceed;

c. The claims presented in this case predominate over any questions of law or fact affecting individual members of the Classes and Sub-classes;

d. Individual joinder of all members of the Classes and Sub-classes is impracticable;

e. Absent a Class, Plaintiff and members of the putative Classes and Sub-classes will continue to suffer harm as a result of Defendant's unlawful conduct; and

f. This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiff and members of the putative Classes and Sub-classes can seek redress for the harm caused by Defendant.

57.    In the alternative, the Classes and Sub-classes may be certified for the following reasons:

a. The prosecution of separate actions by individual members of the Classes and Sub-classes would create a risk of inconsistent or varying adjudication concerning individual members of the Classes and Sub-classes, which would establish incompatible standards of conduct for Defendant;

b. Adjudications of claims of the individual members of the Classes and Sub-classes against Defendant would, as a practical matter, be dispositive of the interests of other members of the putative Classes and Sub-classes who are not parties to the adjudication and may substantially impair or impede the ability of other putative Class and Sub-class Members to protect their interests; and

c. Defendant has acted or refused to act on grounds generally applicable to the members of the putative Classes and Sub-classes, thereby making appropriate final and injunctive relief concerning the putative Classes and Sub-classes as a whole.

58.    In the alternative to those claims seeking remedies at law, Plaintiff and Class and Sub-class Members allege that no plain, adequate, and complete remedy exists at law to address Defendant's unlawful and unfair business practices. The legal remedies available to Plaintiff are inadequate because they are not "equally prompt and certain and in other ways efficient" as equitable relief. *American Life Ins. Co. v. Stewart*, 300 U.S. 203, 214 (1937).

## CLAIMS FOR RELIEF

### COUNT I
### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
**(On Behalf of the Multi-State Implied Warranty Class and Multi-State Implied Warranty Sub-Class and, alternatively, the Nationwide Class and Nationwide Sub-Class)**

59.    Plaintiff re-alleges and incorporates by reference the preceding allegations as though set forth fully herein.

60.    Plaintiff's individual claims are brought under the laws of the State in which she purchased her respective Noticed Product (Illinois). The claims of absent members of the Multi-State Implied Warranty Class and Sub-Class are brought under the state's laws in which they purchased their Noticed Products and identified below.

    a.  Alaska Stat. §§ 45.02.314, et seq.;

    b.  Ark. Code Ann. §§ 4-2-314, et seq.;

    c.  Cal. Civ. Code §§ 1792, 1791.1, et seq. (the "Song-Beverly Act");

    d.  Colo. Rev. Stat. Ann. §§ 4-2-314, et seq.;

    e.  Conn. Gen. Stat. §§ 42a-2-314, et seq.;

    f.  Del. Code Ann. Tit. 6, §§ 2-314, et seq.;

g.  D.C. Code §§ 28:2-314, et seq.;

h.  Fla. Stat. §§ 672.314, et seq.;

i.  Haw. Rev. Stat. §§ 490:2-314, et seq.;

j.  Ind. Code §§ 26-1-2-314, et seq.;

k.  Kan. Stat. Ann. §§ 84-2-314, et seq.;

l.  La. Civ. Code Ann. Art. 2520, et seq.;

m.  Md. Code Ann., Com. Law §§ 2-314, et seq.;

n.  Me. Rev. Stat. Ann. Tit. 11, §§ 2-314, et seq.;

o.  Mass. Gen. Laws ch. 106, §§ 2-314, et seq.;

p.  Mich. Comp. Laws Ann. §§ 440.2314, et seq.;

q.  Minn. Stat. §§ 336.2-314, et seq.;

r.  Miss. Code Ann. §§ 75-2-314, et seq.;

s.  Mo. Rev. Stat. §§ 400.2-314, et seq.;

t.  Mont. Code Ann. §§ 30-2-314, et seq.;

u.  Neb. Rev. Stat. Ann. §§ 2-314, et seq.;

v.  Nev. Rev. Stat. §§ 104.2314, et seq.;

w.  N.H. Rev. Stat. Ann. §§ 382-A:2-314, et seq.;

x.  N.J. Stat. Ann. §§ 12A:2-314, et seq.;

y.  N.M. Stat. Ann. §§ 55-2-314, et seq.

z.  N.D. Cent. Code §§ 41-02-31, et seq.;

aa. Ohio Rev. Code Ann. §§ 1302.27, et seq.;

bb. Okla. Stat. Tit. 12A, §§ 2-314, et seq.;

cc. 13 Pa. Stat. Ann. §§ 2314, et seq.;

dd. R.I. Gen. Laws §§ 6A-2-314, et seq.;

ee. S.C. Code Ann. §§ 36-2-314, et seq.;

ff.  S.D. Codified Laws §§ 57A-2-314, et seq.;

gg. Tex. Bus. & Com. Code Ann. §§ 2.314, et seq.;

hh. Utah Code Ann. §§ 70A-2-314, et seq.;

ii.  Va. Code Ann. §§ 8.2-314, et seq.;

jj.  Vt. Stat. Ann. Tit. 9A, §§ 2-314, et seq.;

kk. W. Va. Code §§ 46-2-314, et seq.; and

ll.  Wyo. Stat. Ann. §§ 34.1-2-314, et seq.

61.     Defendant manufactured and distributed Noticed Products for sale to Plaintiff and the Class and Sub-class members.

62.     Defendant impliedly warranted to Plaintiff and Class and Sub-class members that their Noticed Products were free of defects and were merchantable and fit for their ordinary purpose for which such goods are used.

63.     As alleged herein, Defendant breached the implied warranty of merchantability because the Noticed Products suffer from a safety defect. The Noticed Products are, therefore, defective, unmerchantable, and unfit for their ordinary, intended purpose.

64.     Due to the safety defect, Plaintiff and the members of the Class and Sub-class cannot use their Noticed Products as intended, substantially free from defects.  The Noticed Products do not provide safe and reliable function as intended, represented, or

22

described and pose a serious risk of injury.  As a result, Plaintiff and the members of the Class and Sub-class cannot use their Noticed Products for the purposes for which they purchased them.

65.    Furthermore, due to the safety defect, Plaintiff and the Class and Sub-class members cannot operate their Noticed Products as intended, substantially free from defects, unless they elect to use a replacement inner pot that holds substantially less volume than that which they purchased.  As a result, Plaintiff and members of the Class and Sub-class cannot use their Noticed Products for the purposes for which they purchased them.

66.    Plaintiff did not receive or otherwise have the opportunity to review, at or before the time of sale, any purported warranty exclusions and limitations of remedies. Accordingly, any such exclusions and limitations of remedies are unconscionable and unenforceable. As a direct and proximate result of the breach of implied warranty of merchantability, Plaintiff and Class and Sub-class members have been injured in an amount to be proven at trial.

## COUNT II
### VIOLATION OF THE MINNESOTA PREVENTION OF CONSUMER FRAUD ACT (MINN. STAT. § 325F.68, *et seq*.)
### (On behalf of the Nationwide Class and Nationwide Sub-Class)

67.    Plaintiff re-alleges and incorporates all preceding factual allegations as set forth fully herein.

68.    Defendant is a citizen of the State of Minnesota.

69.    Minnesota's Private Attorney General Statute (Minn. Stat. § 8.31, subd. 3a) allows Plaintiff and the Class to bring a claim under Minn. Stat. § 325F.69.

70.     The Minnesota Prevention of Consumer Fraud Act prohibits "[t]he act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely therein in in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby. . ." Minn. Stat. § 325F.69(1). Defendant advertised and represented to Plaintiff and members of the Class that the pressure cookers possessed certain qualities and characteristics, including but not limited to safety and capacity. Other states across the Country have enacted substantially similar consumer protection statutes which require the same or similar showings of proof, and which prevent the unlawful conduct described herein. .[17]

71.     Defendants advertised and made representations with respect to the safety of the pressure cookers, and the capacity of the inner pot, to Plaintiff and the Class.

---

[17] *See* Alaska Stat. § 45.50.471, *et seq.*, Ark. Code § 4-88-101, *et seq.*, Colo. Rev. Stat. § 6-1-105, *et seq.*, Conn. Gen. Stat. § 42-110b, *et seq.*, 6 Del. Code § 2511, *et seq.*, D.C. Code § 28-3901, *et seq.*, Fla. Stat. § 501.201, *et seq.*, Ga. Code Ann. § 10-1-393, *et seq.* and Ga. Code Ann. § 10-1-370 *et seq.*, Haw. Rev. Stat. § 480, *et seq.*, Idaho Code § 48-601, *et seq.*, 815 ILCS § 505/1, *et seq.*, Kan. Stat. § 50-623, *et seq.*, Ky. Rev. Stat. § 367.110, *et seq.*, La. Rev. Stat. § 51:1401, *et seq.*, M.G.L. c. 93A, *et seq.*, Me. Rev. Stat. Ann. tit. 5, § 205-A, *et seq.*, Md. Com. Law Code § 13-101, *et seq.*, Mich. Stat. § 445.901, *et seq.*, Missouri Stat. § 407.010, *et seq.*, Neb. Rev. Stat. §§ 59-1601, *et seq.*, Nev. Rev. Stat. § 598.0903, *et seq.*, N.H. Rev. Stat. § 358-A:1, *et seq.*, N.J. Rev. Stat. § 56:8-1, *et seq.*, N.M. Stat. § 57-12-1, *et seq.*, N.Y. Gen. Bus. Law § 349 *et seq.*, N.D. Cent. Code § 51-15-01, *et seq.*, Ohio Rev. Code Sec. 4165.01 *et seq.*, Okla. Stat. 15 § 751, *et seq.*, Or. Rev. Stat. § 646.605, *et seq.*, R.I. Gen. Laws. § 6-13.1-1, *et seq.*, S.C. Code Laws § 39-5-10, *et seq.*, S.D. Code Laws § 37-24-1, *et seq.*, Tex. Bus. & Com. Code § 17.45, *et seq.*, 9 Vt. § 2451, *et seq.*, Va. Code § 59.1-196, *et seq.*, Wash. Rev. Code. § 19.86.010, *et seq.*, W. Va. Code § 46A-6-101, *et seq.*, Wis. Stat. Ann. § 100.18, *et seq.*

72.      Defendant states that the Insignia Multi-Function Pressure Cooker purchased "represents the state of the art in multi-function pressure cooker design and is designed for reliable and trouble-free performance."[18]

73.      The User Guide includes specific instructions for filling the pot, and explicitly directs consumers: "Do not overfill the inner pot. Do not exceed the Max marking which applies to solids and liquids combined."[19]  The Max marking on the inner pots as sold, however, is marked at an unsafe level.  Accordingly, they are designed to be overfilled.

74.      The Noticed Products have incorrect volume markings on the inner pots, which can lead a consumer to fill the pot beyond a safe level, causing hot foods and liquids to be ejected when the pressure cooker is vented using the quick release method or opened while its contents are pressurized. This poses a burn hazard to consumers.

75.      As a result of the injury risks to operators associated with the use of the Noticed Products, by Defendant's own admission in its Recall Notice, the Noticed Products have been rendered entirely worthless.

76.      Instead, the only option for consumers who purchased these Noticed Products is to participate in a recall to receive a free replacement inner pot and floating lock valve. However, Best Buy does not disclose in its Recall Notice that the replacement inner pot holds substantially less volume than the pot initially purchased.

---

[18]    NS-MC60SS9 User Manual, p. 16, *available at*:  https://www.manualslib.com/manual/2262546/Insignia-Ns-Mc60ss9.html?page=2;  NS-MC80SS9 User Manual, p. 2 https://www.manualslib.com/manual/1530772/Insignia-Ns-Mc80ss9.html?page=16
[19] *Id*. at p. 16.

77.     Defendant intended for Plaintiff and the Class to rely upon, and accept as true, the representations and omissions with respect to the safety and capacity of the pressure cookers.

78.     Defendant's representations and omissions with respect to the safety and capacity of the pressure cookers were made in connection with the sale of the pressure cookers to Plaintiff and the Class.

79.     Defendant intentionally and/or knowingly misrepresented the safety and capacity of the pressure cookers to Plaintiff and the Class.

80.     Defendant's unfair or deceptive acts or practices were likely to deceive reasonable consumers about the safety and capacity of the pressure cookers and, by extension, the value of the pressure cookers. Plaintiff and the Class relied upon, and were in fact deceived by, Defendant's representations with respect to the safety and capacity of the pressure cooker in deciding to purchase it over similar products offered by competitors.

81.     Plaintiff and the Class were injured in fact and suffered actual damages as a result of their reliance on Defendant's representations and omissions with respect to the safety and capacity of the pressure cookers.  Defendant's wrongful conduct was the direct and proximate cause of the injuries to Plaintiff and the Class.  Because of Defendant's fraudulent conduct, the value of the pressure cookers has been greatly diminished.

82.     Had Plaintiff and the Class been aware of these defects, Plaintiff and the Class would have either paid less for their pressure cookers or would not have purchased them at all. Plaintiff and the Class did not receive the benefit of their bargain as a result of Defendant's misconduct.

83.     Pursuant to Minn. Stat. § 8.31, subd. 3a, Plaintiff and the Class seek actual damages, attorneys' fees, and any other just and proper relief available under the Minnesota Prevention of Consumer Fraud Act.

**COUNT III**
**VIOLATION OF MINNESOTA UNLAWFUL TRADE PRACTICES ACT**
**(MINN. STAT. § 325D.13, *et seq*.)**
**(On behalf of the Nationwide Class and Nationwide Sub-Class)**

84.     Plaintiff re-alleges and incorporates all preceding factual allegations as set forth fully herein.

85.     Defendant is a manufacturer, marketer, seller, and distributor of the pressure cookers.

86.     Minnesota Statue § 325D.13 provide that, "no person all, in connection with the sale of merchandise, knowingly misrepresent, directly or indirectly, the true quality, ingredients or origin of such merchandise."

87.     By engaging in the conduct described herein, Defendants violated and continue to violate Minn. Stat. § 325D.13 and the similar laws of other states.

88.     Minnesota Statue § 325D.44, subd. 1, provides in part:

a person engages in a deceptive trade practice when, in the course of business, vocation, or occupation, the person:

***

"(5) represents that goods or services have…characteristics, ingredients, uses, benefits, . . . that they do not have;"

"(7) represents that goods or services are of a particular standard, quality, or grade, . . . if they are of another;" and

"(13) engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding."

89.    Consumer protection laws of other states make similar conduct unlawful.[20]

90.    Defendant used and employed unfair methods of competition and/or unfair or deceptive acts or practices including, but not limited to, the following:

     a.  Representing that goods have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that person has sponsorship, approval, status, affiliation or connection that he does not have;

     b.  Representing that goods or services are of a particular standard, quality, or grade or that goods are of a particular style or model, if they are of another;

     c.  Engaging in other fraudulent or deceptive conduct which created the likelihood of confusion or of misunderstanding; and

     d.  Utilizing misrepresentations, knowing omissions, and other sharp business practices to mislead or create a misleading impression regarding the pressure cookers.

91.    Defendant knew or should have known that the pressure cookers were defective in that the pressure cookers are not functionally safe for household use, and that the replacement pot holds less volume than what consumers initially purchased.

92.    Defendant's misrepresentations, concealment, omissions and other deceptive conduct were likely to deceive or cause misunderstanding and did in fact deceive Plaintiff with respect to the safety and capacity of the pressure cooker.

---

[20]As plead above, other states across have enacted substantially similar consumer protection statutes.

93.     Defendant intended that Plaintiff and the Class would rely on Defendant's misrepresentations, concealment, warranties, deceptions, and/or omissions regarding the safety and capacity of the pressure cookers.

94.     Defendant's conduct and omissions described herein occurred repeatedly in Defendant's trade or business and were capable of deceiving a substantial portion of the consuming public.

95.     The facts concealed or not disclosed by Defendant were material facts in that Plaintiff and any reasonable consumer would have considered them in deciding whether to buy an Insignia pressure cooker. Had Plaintiff known that the pressure cooker was not safe for household use, and that it was capable of holding the advertised capacity, Plaintiff would not have purchased the pressure cooker.

96.     Defendant intended that Plaintiff would rely upon the deception by purchasing the pressure cooker, unaware of the undisclosed material facts. This conduct constitutes consumer fraud.

97.     Defendant's unlawful conduct is continuing, with no indication that Defendant intends to cease this fraudulent course of conduct.

98.     Plaintiff has suffered injury by purchasing the pressure cooker.

99.     Defendant has similarly violated the Unlawful Trade Practices Acts of the various states and these states allow for statutory damages.

100.    As a direct and proximate cause of Defendant's violations of the applicable state Unfair Trade Practices and Consumer Protection laws as set forth above, Plaintiff seeks injunctive or declaratory relief prohibiting Defendant from

misrepresenting the qualities, characteristics, and capabilities of the pressure cooker.

<strong><u>COUNT IV</u></strong><br>
<strong>VIOLATION OF THE ILLINOIS CONSUMER FRAUD</strong><br>
<strong>AND DECEPTIVE PRACTICES ACT</strong><br>
<strong>815 ILCS § 505-1, <em>et seq</em>. ("ICFA")</strong><br>
<strong>(On Behalf of the Illinois Class and Illinois Sub-Class)</strong>

101.    Plaintiff re-alleges and incorporates all preceding factual allegations as set forth fully herein.

102.    Plaintiff brings this cause of action on behalf of herself and the Illinois Class and Sub-Class against Defendant.

103.    Plaintiff and other Class and Sub-class Members are persons within the context of the Illinois Consumer Fraud and Deceptive Trade Practices Act ("ICFA"), 815 ILCS § 505/1€.

104.    Defendant is a person within the context of the ICFA, 815 ILCS § 505/1(c).

105.    At all times relevant hereto, Defendant was engaged in trade or commerce as defined under the ICFA, 815 ILCS § 505/1(f).

106.    Plaintiff and the proposed Class and Sub-class members are "consumers" who purchased the Noticed Products for personal, family, or household use within the meaning of the ICFA, 815 ILCS § 505/1(e).

107.    The ICFA prohibits engaging in "unfair or deceptive acts or practices … in the conduct of any trade or commerce…." ICFA, 815 ILCS § 505/2.

108.    The ICFA prohibits any deceptive, unlawful, unfair, or fraudulent business acts or practices, including using deception, fraud, false pretenses, false promises, false

30

advertising, misrepresentation, or the concealment, suppression, or omission of any material fact, or the use or employment of any practice described in Section 2 of the Uniform Deceptive Trade Practices Act ("UDTPA"). 815 ILCS § 505/2.

109.    Plaintiff and the other Illinois Class and Sub-class Members reasonably relied upon Defendant's misrepresentations and omissions alleged herein regarding the Noticed Products, specifically regarding the safety and reliability of the pressure cooker, and regarding the capacity of the inner pots.

110.    Defendant's conduct, as described herein, took place within the State of Illinois and constitutes unfair or deceptive acts or practices in the course of trade and commerce, in violation of 815 ICFA § 505/1, et seq.

111.    Defendant violated the ICFA by representing that the Noticed Products have characteristics or benefits that they do not have. 815 ILCS § 505/2; 815 ILCS § 510/2(7).

112.    Defendant advertised the Noticed Products with the intent not to sell them as advertised, in violation of 815 ILCS § 505/2 and 815 ILCS § 510/2(9).

113.    Defendant engaged in fraudulent and/or deceptive conduct, which creates a likelihood of confusion or misunderstanding in violation of 815 ILCS § 505/2; 815 ILCS § 510/2(3).

114.    Before placing the Noticed Products into the stream of commerce and into the hands of consumers, including Plaintiffs and reasonable consumers, Defendant knew or should have known that the Noticed Products had a serious defect, and were otherwise not able to safely or reliably function as intended and created a serious risk to injury of the

user, but Defendant omitted and concealed this material fact to consumers, including Plaintiff and Illinois Class and Sub-class members, by continuing to place the Noticed Product into the stream of commerce without any notice or disclosure of the material defect.

115.    Defendant chose to market the Noticed Products in this way to impact consumer choices and gain market share. They are aware that all consumers who purchased the Noticed Products were exposed to and would be affected by its misrepresentations and omissions and would reasonably believe that the Noticed Products safely and reliably functioned and were safe for use by the user, and that Defendant's marketing materials, including representations and omissions, were otherwise accurate. However, Defendant's representations are false and misleading because the Noticed Products contain a material defect, are not safe for use by its user, and do not function safely or reliably.

116.    Defendant then chose to remedy this material defect by providing consumers with a replacement inner pot that holds substantially less volume than that of the pressure cooker that consumers purchased. Defendant did not disclose to consumers that by participating in the recall, they would receive a smaller inner pot, and Defendant has refused to refund any monies to consumers.

117.    Defendant intended that Plaintiffs and each of the other Illinois Class and Sub-class members would reasonably rely upon the representations, misleading characterizations, and material omissions concerning the true nature of the Noticed Products and the replacement inner pot.

118.    Defendant's representations, concealment, omissions, and other deceptive conduct were likely to deceive and cause misunderstanding and/or cause Plaintiff and the other Illinois Class and Sub-class members to be deceived about the true nature of the Noticed Products.

119.    Plaintiff and Class and Sub-class Members have been damaged as a proximate result of Defendant's violations of the ICFA. They have suffered damages as a direct and proximate result of purchasing the Noticed Products.

120.    As a direct and proximate result of Defendant's violations of the ICFA, as set forth above, Plaintiff and the Illinois Class and Sub-class members have suffered ascertainable losses of money caused by Defendant's representations and material omissions regarding the ability of the Noticed Products to function as intended, specifically related to the capacity of the Noticed Products.

121.    Had they been aware of the true nature of the Noticed Products, Plaintiff and Illinois Class and Sub-class Members would have paid less for the Noticed Products or would not have purchased them.

122.    Based on Defendant's unfair and/or deceptive acts or practices, Plaintiff and the Illinois Class and Sub-class members are entitled to relief, including restitution, actual damages, treble damages, punitive damages, costs, and attorney's fees, under 815 ILCS § 505/10a. Plaintiff and Illinois Class and Sub-class members are also entitled to injunctive relief, seeking an order enjoining Defendant's unfair and/or deceptive acts or practices.

<u>**COUNT V**</u>
**UNJUST ENRICHMENT/QUASI-CONTRACT**
**(On Behalf of the Multi-State Implied Warranty**
**Class and Sub-Class, and the Multi-State Express**
**Warranty Class and Sub-Class, and, alternatively,**
**the Illinois Class and Sub-Class)**

123.    Plaintiff repeats and realleges the allegations in the preceding paragraphs as if fully set forth herein.

124.    Plaintiff's individual claims are brought under the laws of the State in which they purchased their Noticed Products (Illinois). The claims of absent members of the Multi-State Implied Warranty Class and Sub-class and Multi-State Express Warranty Class and Sub-class are brought under the laws of the State in which they purchased their Noticed Products.

125.    Plaintiff and putative Class Members conferred a benefit on Defendant when they purchased the Noticed Products, which Defendant knew.

126.    Defendant either knew or should have known that the payments rendered by Plaintiff and the Classes and Sub-classes were given with the expectation that the Noticed Products would have the qualities, characteristics, and suitability for use represented and warranted by Best Buy. As such, it would be inequitable for Defendant to retain the benefit of the payments under these circumstances.

127.    By its wrongful acts and omissions described herein, including selling the Noticed Products, which contain both a safety defect described in detail above and which do not safely contain the capacity represented, did not otherwise perform as represented

and for the particular purpose for which they were intended, Defendant was unjustly enriched at the expense of Plaintiff and putative Class and Sub-class Members.

128.    Plaintiff's detriment and Defendant's enrichment were related to and flowed from the wrongful conduct challenged in this Complaint.

129.    Defendant has profited from its unlawful, unfair, misleading, and deceptive practices at the expense of Plaintiff and putative Class and Sub-class Members when it would be unjust for Defendant to be permitted to retain the benefit. It would be inequitable for Defendant to retain the profits, benefits, and other compensation obtained from its wrongful conduct described herein in connection with selling the Noticed Products.

130.    Defendant has been unjustly enriched in retaining the revenues derived from Class members' purchases of the Noticed Products, which retention of such revenues under these circumstances is unjust and inequitable because Defendant manufactured the defective Noticed Products, and Defendant misrepresented by omission the nature of the Noticed Products and knowingly marketed and promoted dangerous and defective Noticed Products, which caused injuries to Plaintiff and the members of the Classes and Sub-classes because they would not have purchased the Noticed Products based on the exact representations if the true facts concerning the Noticed Products had been known.

131.    Defendant was also unjustly enriched in retaining the revenues derived from Class and Sub-class members' purchases of the Noticed Products, which retention of such revenues under these circumstances is unjust and inequitable, because Defendant misrepresented by omission the capacity of the Noticed Products, which caused economic injuries to Plaintiff and the members of the Classes and Sub-classes because they would

not have purchased the Noticed Products based on the exact representations if the true facts concerning the capacity of the inner replacement pot had been known.

132.     Plaintiff and putative Class and Sub-class Members have been damaged as a direct and proximate result of Defendant's unjust enrichment because they would not have purchased the Noticed Products on the same terms or for the same price had they known the true nature of the Noticed Products and the misstatements regarding what the Noticed Products were and their characteristics.

133.     Defendant either knew or should have known that payments rendered by Plaintiff and putative Class and Sub-class Members were given and received with the expectation that the Noticed Products would work as represented by Defendant in advertising, on Defendant's websites, and the Noticed Products' labels and packaging. It is inequitable for Defendant to retain the benefit of payments under these circumstances.

134.     Plaintiff and putative Class and Sub-class Members are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant.

135.     As a direct and proximate result of Defendant's wrongful conduct and unjust enrichment, Plaintiff and putative Class and Sub-class Members are entitled to restitution of, disgorgement of, and/or imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendant for their inequitable and unlawful conduct.

## COUNT VI
## BREACH OF EXPRESS WARRANTIES
### (On Behalf of Plaintiff and the Multi-State Express Warranty Class and Sub-Class)

136.    Plaintiff repeats and re-alleges all proceeding factual allegations above as if fully set forth herein.

137.    Defendant provided Plaintiff and Class and Sub-class Members with an express warranty in the form of representations and marketing regarding the capacity of the Noticed Products. The Noticed Products were sold as "6-Qt." and "8-Qt." Multi-function pressure cookers.

138.    The above affirmations of fact were not couched as "belief" or "opinion," and were not "generalized statements of quality not capable of proof or disproof."

139.    These affirmations of fact became part of the basis for the bargain and were material to Plaintiff's and Class and Sub-class members' transactions.

140.    Plaintiff and Class and Sub-class members reasonably relied upon Defendant's affirmations of fact and justifiably acted in ignorance of the material facts omitted or concealed when they decided to buy Defendant's Products.

141.    Defendant received notice by U.S.P.S. Certified Mail from Plaintiffs' counsel related to the claims in this Complaint, specifically Defendant's breaches of its warranties, as described herein. Moreover, Plaintiffs' counsel served Defendant with pre-suit notice of its breaches of warranties on behalf of Plaintiff and Class and Sub-class members via U.S.P.S. Certified Mail on March 19, 2024.

142.    Defendant thereby breached the following state warranty laws:

        a.    Cal. Comm. Code § 2313;

b.      Fla. Stat. § 672.313;

c.      106 Mass. Gen. Laws Ann. § 2-313;

d.      M.C.L.A. § 440.2313;

e.      Minn. Stat. § 336.2-313;

f.      R.S. Mo. § 400.2-313;

g.      N.J. Stat. Ann. § 12A:2-313;

h.      N.Y. U.C.C. Law § 2-313; and

i.      Wash. Rev. Code Ann. § 6A.2-313;

143.    Defendant breached the express warranty because the Noticed Products cannot be safely used at the capacity advertised due to the material defect the Noticed Products contain and that was omitted from the marketing of the Noticed Products, and the replacement inner pot is less than that which Plaintiff and the Class and Sub-class Members purchased.

144.    As a direct and proximate result of Defendant's breach of the express warranty, Plaintiff and Class and Sub-class members were damaged in the amount of the price they paid for the Products, in an amount to be proven at trial.

## COUNT VII
## BREACH OF EXPRESS WARRANTIES
### (On Behalf of Plaintiff and the Illinois Class and Sub-class)

145.    Plaintiff repeats and re-alleges all proceeding factual allegations above as if fully set forth herein.

146.    Plaintiff brings this Count on behalf of herself and Illinois Class.

147.    Plaintiff brings this Count under Illinois law.

148.    Like many states, Illinois law states express warranties by sellers of consumer goods are created when an affirmation of fact or promise is made by the seller to the buyer, which relates to the goods and becomes the basis of the bargain. Such warranties can also be created based upon descriptions of the goods, which are made as part of the basis of the bargain that the goods shall conform to the description. *See* 810 ILCS § 5/2-313(1)(a)-(b).

149.    Defendant, as the marketers, labelers, distributors, and/or sellers, expressly warranted the representations directed to the Noticed Products.

150.    Plaintiff formed a contract with Defendant at the time he purchased the Noticed Products. The terms of that contract include the promises and affirmations of fact that Defendant made through an extensive, uniform, nationwide marketing campaign. Among other affirmations of fact and promises described herein, Defendant represents that the Noticed Products have the qualities the representations proclaim they do.

151.    Defendant's express warranties and their affirmations of act and promises made to Plaintiff and Class and Sub-class Members regarding the Noticed Products became the basis of the bargain between Defendant and Plaintiff and the Class and Sub-class, thereby creating an express warranty that the Noticed Products would confirm to the representations, and the affirmations of fact, representations, promises, and descriptions contemplated therein.

152.    Contrary to Defendant's affirmations of fact and promises, the Noticed Products do not conform to the representations. Defendant breached the express warranties and/or contract obligations by placing the Noticed Products into the stream of commerce

and selling the Noticed Products to consumers when the Noticed Products are not safe or reliable for use because a material defect renders them incapable of being used at the capacity advertised in a safe manner.

153.    As such, Defendant's Noticed Products do not conform to the express warranties because the representations are false or misleading.

154.    Defendant made the representations intending that Plaintiff and Class and Sub-class Members would rely on the representations. Plaintiff and Sub-class Class members did rely on Defendant's representations when deciding to purchase the Noticed Products.

155.    Where required, Defendant's affirmations of fact and promises were material to Plaintiff's and Class and Sub-class Members' decision to purchase the Noticed Products.

156.    All conditions precedent to Defendant's liability for its breach of express warranty have been performed by Plaintiff and Class and Sub-class members.

157.    Defendant received notice by U.S.P.S. Certified Mail from Plaintiff's counsel related to the claims in this Complaint, specifically Defendant's breaches of its warranties, as described herein. Plaintiff's counsel served Defendant with pre-suit notice of its breaches of warranties on behalf of Plaintiff's and Class and Sub-class members via U.S.P.S. Certified Mail on March 19, 2024.

158.    As a direct and proximate result of Defendant's breaches of express warranty, Plaintiff and Class and Sub-class Members have been damaged because they did not receive the Product as expressly warranted by Defendant. Plaintiff and Class and Sub-

class members did not receive the benefit of the bargain and suffered damages by purchasing the misrepresented Noticed Products at a price premium.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated members of the Classes and Sub-classes, prays for relief and judgment, including entry of an order:

A.  Declaring that this action is properly maintained as a class action, certifying the proposed Class(es), appointing Plaintiff as Class Representative, and appointing Plaintiff's counsel as Class Counsel;

B.  Directing that Defendant bear the costs of any notice sent to the Class(es);

C.  Declaring that Defendant must disgorge, for the benefit of the Class(es), all or part of the ill-gotten profits they received from the sale of the Noticed Products or order Defendant to make full restitution to Plaintiff and the members of the Class(es);

D.  Awarding restitution and other appropriate equitable relief;

E.  Granting an injunction against Defendant to enjoin it from conducting its business through the unlawful, unfair, and fraudulent acts or practices set forth herein;

F.  Granting an Order requiring Defendant to fully and adequately disclose the safety risks associated with the Noticed Products to anyone who may still be at risk of buying and using the Noticed Products;

G.  Granting an Order requiring Defendant to fully and adequately disclose the capacity of the replacement inner pot as part of the recall;

H.  Ordering a jury trial and damages according to proof;

I.  Enjoining Defendant from continuing to engage in the unlawful and unfair business acts and practices as alleged herein;

J.  Awarding attorneys' fees and litigation costs to Plaintiff and members of the Class(es);

K.  Awarding prejudgment interest, and punitive damages as to Counts One, Four, Five, Six and Seven, as permitted by law; and

L.  Ordering such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury of all claims in this Complaint so triable.

Dated: March 26, 2024                    Respectfully submitted,

/s Robert K. Shelquist
**LOCKRIDGE GRINDAL NAUEN PLLP**
Robert K. Shelquist (MN 21310X)
Rebecca A. Peterson (MN 392663)
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
rkshelquist@locklaw.com
rapeterson@locklaw.com

Kevin Laukaitis*
**LAUKAITIS LAW LLC**
954 Avenida Ponce De Leon
Suite 205, #10518
San Juan, Puerto Rico 00907
Phone: (215) 789-4462
E-mail: klaukaitis@laukaitislaw.com

Mason A. Barney*
Lisa R. Considine*
**SIRI | GLIMSTAD LLP**
745 Fifth Avenue, Suite 500
New York, NY 10151
Main: 212-532-1091
Facsimile: 646-417-5967
mbarney@sirillp.com
lconsidine@sirillp.com

*Pro Hac Vice* Application Forthcoming

*Attorneys for Plaintiff and Putative Class Members*

42