UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Jewel Jordan and Michael Walsh,            Civil No. 24-1066 (DWF/TNL)
*individually and on behalf of all others similarly situated*,

         Plaintiffs,                                      **MEMORANDUM OPINION AND ORDER**

v.

Best Buy Co., Inc.,

         Defendant.

## INTRODUCTION

This matter is before the Court on Defendant Best Buy Co., Inc.'s ("Best Buy")[1] motion to compel arbitration and motion to strike class allegations. (Doc. No. 31.) Plaintiffs Jewel Jordan and Michael Walsh oppose the motion. (Doc. No. 48.) For the reasons set forth below, the Court grants the motion to compel arbitration and the motion to strike class allegations related to Plaintiff Jordan but denies the motion to strike class allegations related to Plaintiff Walsh.

## BACKGROUND

### I. Pressure Cooker Recall

On October 26, 2023, the U.S. Consumer Product Safety Commission announced a recall of approximately 930,000 Insignia pressure cookers due to incorrect volume

---

[1] Defendant notes that the proper defendants for Plaintiffs' claims are BestBuy.com, LLC and Best Buy Stores, L.P., not Best Buy Co., Inc. (Doc. No. 33 at 3 n.1.)

markings on the inner cooking pot. (Doc. No. 26 ("Am. Compl.") ¶ 4.) The incorrect volume markings prompted users to fill the pot beyond the intended level, causing contents of the pot to be ejected from the pressure cooker when opened. (*Id.*)

Best Buy subsequently recalled the pressure cookers and, in a recall notice, instructed customers to immediately stop using the pressure cookers. (*Id.* ¶ 6.) That notice also included instructions to consumers on how to register for a replacement of the inner pot and locking valve. (*Id.* ¶¶ 6, 25.) Best Buy's notice did not allow for "credits, refunds, or replacement kits" for the recalled products. (*Id.* ¶¶ 8, 26) A customer's only option was to replace the inner pot with one that held less volume. (*Id.* ¶¶ 28-29.)

Jewel Jordan purchased a 6-quart model of the pressure cooker from a store in Illinois in the summer of 2022 for approximately $60. (*Id.* ¶ 31.) Upon learning of the recall, Jordan submitted her request for a replacement inner pot and valve, which she received. (*Id.* ¶ 38.)

Michael Walsh purchased an 8-quart model of the pressure cooker from a store in California in 2022. (*Id.* ¶ 42.) Upon learning of the recall, Walsh contacted Best Buy to request a refund because he did not wish for a smaller inner pot. (*Id.* ¶ 49.) Walsh did not receive either a replacement or refund. (*Id.*)

## II. Best Buy's Terms and Conditions

Separately, Jordan purchased an air fryer from BestBuy.com on September 20, 2022. (Doc. No. 37 ("Wang Decl.") ¶ 5.)[2] Best Buy argues that this purchase subjected Jordan to Best Buy's terms and conditions ("the Terms"), which include an arbitration agreement and a class action waiver.

The Terms' arbitration agreement mandates that "ANY DISPUTE INVOLVING YOU AND BEST BUY OR ANY OF ITS AGENTS MUST BE RESOLVED THROUGH INDIVIDUAL ARBITRATION" with certain, inapplicable exceptions. (Doc. No. 35 ("Mattox Decl.") ¶ 4, Ex. A at 4.) The definition of "Dispute" is to "be interpreted broadly and cover any claim or controversy arising out of or relating in any way whatsoever to your relationship or interaction with Best Buy." (*Id.*) The definition gives examples of relationships or interactions that constitute a "Dispute," including "your purchase of products or services offered, sold, or distributed by Best Buy." (*Id.*)

The Terms also include a class action waiver:

> YOU AND BEST BUY AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR ITS INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED

---

[2] Plaintiffs object to Best Buy's reliance on matters outside the pleading to support its motion to strike. (Doc. No. 48 at 24.) First, the amended complaint references use of "Defendant's books and records" to ascertain class members (Am. Compl. ¶ 62), so use of Best Buy's records to determine Jordan's eligibility for class membership was embraced by the complaint and can properly be considered. *See, e.g.*, *In re RFC & ResCap Liquidating Tr. Litig.*, No. 13-cv-3451, 2015 WL 2451254, at *4-5 (D. Minn. May 21, 2015). Second, the amended complaint includes reference to BestBuy.com (Am. Compl. ¶¶ 4, 16), so any reference to Best Buy's website is embraced by the complaint and can properly be considered. *See In re RFC*, 2015 WL 2451254, at *4.

3

CLASS, CONSOLIDATED, PRIVATE ATTORNEY GENERAL, OR REPRESENTATIVE PROCEEDING.  THIS MEANS THAT YOU MAY NOT PURPORT TO ACT ON BEHALF OF A CLASS OR ANY OTHER PERSON.

(*Id.* at 5.)

A customer can agree to these Terms in three ways:  (1) by enrolling in the My Best Buy program, (2) by creating a BestBuy.com account, or (3) purchasing an item online as a guest.  (Doc. No. 36 ("Olson Decl.") ¶ 6.)  Jordan's air fryer purchase implicates the third possibility—she purchased it online without enrolling in a membership or creating an account.  (Doc. No. 48-2 ("Jordan Decl.") ¶¶ 8, 11.)  Prior to completing a purchase on Best Buy's website, a user must click the "Place Your Order" button.  (Olson Decl. ¶¶ 8, 11.)  Directly above that button there is the following disclosure:  "By placing your order, you agree to our BestBuy.com Terms and Conditions."  (*Id.* ¶ 8, Ex. A.)[3]  The words "BestBuy.com Terms and Conditions" are in

---

[3]     At oral argument, but not in their response brief, Plaintiffs disputed if Plaintiff Jordan's checkout screen would have been the same as the screenshot provided in Olson Declaration Exhibit A.  That screenshot included a section above the Place Your Order button requiring the user to create a BestBuy.com account.  (*See* Olson Decl. ¶ 8, Ex. A.)  Because Jordan never created a BestBuy.com account, Plaintiffs reasoned that she would not have seen a screen like this when completing her purchase.  However, that screenshot indicates that the item necessitating the BestBuy.com account was the internet security software which would be delivered digitally.  Additionally, Plaintiffs' response brief accepts the presence of this language, acknowledging that "[i]t is clear from this screenshot that a customer must only click 'Place Your Order' to place their order.  That's it."  (Doc. No. 48 at 10.)  Because Plaintiffs are inconsistent and because Best Buy's declarations make clear that the Place Your Order button and the hyperlinked Terms directly above are present for all purchases, not just those with digital deliveries, the Court will accept that the language is present for all transactions on BestBuy.com.

blue and are hyperlinked to the terms. (*Id.*) Jordan declares that she did not see the link and never reviewed the Terms. (Jordan Decl. ¶¶ 7-8.)

### III. Current Action

Jordan and Walsh, on behalf of themselves and all other consumers similarly situated, brought the current action against Best Buy to recover economic damages associated with the Insignia pressure cooker. (Am. Compl. ¶¶ 1, 10.) Best Buy moves to compel arbitration of all disputes raised by Jordan (Doc. No. 31), arguing that the air fryer purchase bound Jordan to Best Buy's Terms (Doc. No. 33). For the same reason, Best Buy moves to strike the class allegations as to Jordan. (Docs. No. 31, 33.) Lastly, Best Buy moves to strike the class allegations as to Walsh (Doc. No. 31), arguing that the individualized inquiries to determine if a plaintiff is subject to Best Buy's Terms warrants the class uncertifiable (Doc. No. 33).

### DISCUSSION

### I. Motion to Compel Arbitration

#### A. Legal Standard

A motion to compel arbitration is evaluated under the Federal Rules of Civil Procedure either as a Rule 12(b)(6) motion to dismiss or as a Rule 56 motion for summary judgment, depending on whether the Court considers matters outside of the pleadings. *Seldin v. Seldin*, 879 F.3d 269, 272 (8th Cir. 2018); *City of Benkelman v. Baseline Eng'g Corp.*, 867 F.3d 875, 881-82 (8th Cir. 2017). The parties have presented, and the Court has considered, matters outside of the pleadings, so the Court treats this

5

motion as one for summary judgment. *See* Fed. R. Civ. P. 12(d); *see also City of Benkelman*, 867 F.3d at 882.

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 401 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denials of his pleading, but . . . must set forth specific facts showing that

there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968)).

### B.    Analysis

A district court's role in a motion to compel arbitration is limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses dispute. 9 U.S.C. § 2; *see also, e.g.*, *Foster v. Walmart, Inc.*, 15 F.4th 860, 862 (8th Cir. 2021). These "threshold questions of arbitrability are for a court to decide, unless there is clear and unmistakable evidence the parties intended to commit questions of arbitrability to an arbitrator." *Eckert/Wordell Architects, Inc. v. FJM Props. of Willmar, LLC*, 756 F.3d 1098, 1100 (8th Cir. 2014). The question of whether a valid agreement exists is governed by state law; the question of whether a dispute falls within the scope of that agreement is governed by federal law. *Donaldson Co. v. Burroughs Diesel, Inc.*, 581 F.3d 726, 731 (8th Cir. 2009).

#### 1.    Validity of the Arbitration Agreement

Through the Federal Arbitration Act ("FAA"), Congress established a strong federal policy favoring arbitration. *See Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987). The FAA provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This provision reflects "both a 'liberal federal policy favoring arbitration,' and the 'fundamental principle that arbitration is a matter of contract.'" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (first quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); and then

7

quoting *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010)). "[A] court will enforce an arbitration agreement unless a party can show it will not be able to vindicate its rights in the arbitral forum." *Siebert v. Amateur Athletic Union of the U.S., Inc.*, 422 F. Supp. 2d 1033, 1038 (D. Minn. 2006) (citing *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 90 (2000)).

Because arbitration agreements are contracts, there must be mutual assent of the parties. *Foster*, 15 F.4th at 863. Under Minnesota law, a party's assent to a contract is judged by the party's objective, rather than subjective, intent. *Siebert*, 422 F. Supp. 2d at 1039; *Riley Bros. Constr., Inc. v. Shuck*, 704 N.W.2d 197, 202 (Minn. Ct. App. 2005). In the context of internet contracts, how assent is given depends on whether the contract is a clickwrap agreement or a browsewrap agreement. *Cf. Jones v. Experian Info. Sols., Inc.*, No. 23-cv-3887, 2025 WL 227198, at *2 (D. Minn. Jan. 7, 2025) (explaining the need for mutual assent either from affirmative acknowledgment or notice).

A clickwrap agreement is an online contract in which assent is given by the user by affirmatively clicking that they agree, typically after being presented with the terms. *See Foster*, 15 F.4th at 863. These types of agreements are valid because assent is clear through the affirmative act. *Siebert*, 422 F. Supp. 2d at 1039-40. A browsewrap agreement is an online contract in which assent is inferred by the performance of some action, such as simply accessing the website. *Foster*, 15 F.4th at 863. These types of agreements require a more in-depth analysis of assent because the user may not read, nor even be aware of, the terms. *See id.*; *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1176 (9th Cir. 2014). The Court finds that Best Buy's Terms are more accurately

8

considered a browsewrap agreement because the Terms are never affirmatively accepted and Jordan can (and did) use the website without viewing the Terms.

Browsewrap agreements require either actual or inquiry notice in order to find mutual assent. *Foster*, 15 F.4th at 863-64. Actual notice "occurs when the user is actually aware of the terms of use, most commonly after clicking on a hyperlink and reviewing them." *Id.* at 863. Jordan declares that she was unaware of the Terms, never reviewed the Terms, and did not see or agree to any terms while purchasing the air fryer, so actual notice was not present. Inquiry notice occurs when "the website puts a reasonably prudent user on inquiry notice of the terms." *Nguyen*, 763 F.3d at 1177. Courts look at the "website's overall design and content," specifically whether the relevant terms are "reasonably conspicuous." *Foster*, 15 F.4th at 864 (quoting *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 233 (2d Cir. 2016)). Courts will not enforce agreements for which the terms were "buried at the bottom of the page or tucked away in obscure corners of the website." *Nguyen*, 763 F.3d at 1177; *see also Engen v. Grocery Delivery E-Servs. USA Inc.*, 453 F. Supp. 3d 1231, 1238 (D. Minn. 2020). However, if the website contains "an explicit textual notice" of the terms, courts will generally find that a user was on inquiry notice. *Nguyen*, 763 F.3d at 1177; *see also Engen*, 453 F. Supp. 3d at 1238. Best Buy's Terms appear directly above the Place Your Order button, in plainly readable text, with a hyperlink in blue to stand out. *See Karim v. Best Buy Co.*, No. 22-cv-4909, 2023 WL 3801909, at *4-5 (N.D. Cal. June 2, 2023) (finding that Best Buy's terms were reasonably conspicuous for these same reasons); *Rodriguez v. Best Buy Co.*, No. 23-cv-1194, 2023 WL 8946206, at *3-4 (C.D. Cal. Nov. 14, 2023)

9

(same). The Court finds that the Terms at issue were reasonably conspicuous and, therefore, someone who completes a purchase on BestBuy.com is on inquiry notice of the associated Terms. By completing the purchase of the air fryer, Jordan was on inquiry notice of the Terms.

Because Jordan was on inquiry notice of the Terms, by clicking the Place Your Order button and completing her purchase of the air fryer, she assented to the Terms. There is a valid arbitration agreement between Jordan and Best Buy. The Court now turns to whether the dispute at hand falls within the scope of that valid agreement.

### 2. Application of the Arbitration Agreement

A party can only be compelled to submit to arbitration in situations in which they agreed to be subject to an arbitration agreement. *See Parm v. Bluestem Brands, Inc.*, 898 F.3d 869, 873 (8th Cir. 2018). But when a valid arbitration agreement exists, as it does here, a court must "liberally construe" it, "resolving any doubts in favor of arbitration." *Id.* (quoting *Unison Co. v. Juhl Energy Dev., Inc.*, 789 F.3d 816, 818 (8th Cir. 2015)). Only if it can be said with "positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute" will a court find that the dispute does not fall within the scope of the arbitration clause. *3M Co. v. Amtex Sec., Inc.*, 542 F.3d 1193, 1199 (8th Cir. 2008) (quoting *MedCam, Inc. v. MCNC*, 414 F.3d 972, 975 (8th Cir. 2005)). In deciding whether a dispute falls within the scope, courts first ask whether the arbitration clause is broad or narrow. *Fleet Tire Serv. of North Little Rock v. Oliver Rubber Co.*, 118 F.3d 619, 621 (8th Cir. 1997). If the clause is broad, a court must send a claim to arbitration "as long as the underlying factual

allegations simply touch matters covered by the arbitration provision." *Parm*, 898 F.3d at 874 (quoting *Unison Co.*, 789 F.3d at 818). If the clause is narrow, the court must decide if the dispute involves an agreement collateral to the arbitration clause. *Fleet Tire*, 118 F.3d at 621. Plaintiffs bear the heavy burden of proving that a dispute does not fall within the scope of an agreement. *Green Tree*, 531 U.S. at 91.

The arbitration clause in Best Buy's Terms broadly states that it covers "ANY DISPUTE INVOLVING YOU AND BEST BUY." (Mattox Decl. ¶ 4, Ex. A at 4.) The definition of "Dispute" is to "be interpreted broadly and cover any claim or controversy arising out of or relating in any way whatsoever to your relationship or interaction with Best Buy." (*Id.*) Phrases such as "relating in any way whatsoever" clearly indicate broad language. *See Fleet Tire*, 118 F.3d at 621 (finding that the phrase "relating to" "constitutes the broadest language the parties could reasonably use"); *Parm*, 898 F.3d at 872, 874 (finding that a clause which covered claims "arising out of or relating to" the agreement was clearly broad). With this broad language in mind, the Court must consider whether Plaintiffs' claims, and the underlying factual allegations, "touch matters covered by the arbitration provision." *Parm*, 898 F.3d at 875. Broad arbitration clauses apply to transactions other than the one in which the agreement was formed. *See, e.g.*, *Rodriguez*, 2023 WL 8946206 (applying Best Buy's arbitration agreement formed through an online purchase to an in-store purchase). Jordan's claims involve a purchase she made from Best Buy, which is part of her "relationship with Best Buy."

It matters not that Jordan agreed to the Terms subsequent to purchasing the pressure cooker. The broad language of the Terms' arbitration clause expresses a clear

11

intent to apply to all interactions with Best Buy, without regard for the time.[4] While the Court has not previously addressed the issue of retroactive application of arbitration agreements, other courts in the Eighth Circuit that have faced similar questions have applied broad language both prospectively and retroactively. *See Boehm v. VW Credit, Inc.*, No. 21-cv-406, 2022 WL 159285 (D. Neb. Jan. 18, 2022); *Decker v. Bookstaver*, No. 09-CV-1361, 2010 WL 2132284 (E.D. Mo. May 26, 2010); *Goza v. Multi-Purpose Civic Ctr. Facilities Bd. for Pulaski Cnty.*, No. 12-cv-6125, 2014 WL 3672128 (W.D. Ark. July 23, 2014). Due to the broad language of Best Buy's Terms, the Court cannot say with "positive assurance" that the dispute between Jordan and Best Buy is not encompassed by the arbitration clause. The Court finds that the broad language of the Terms applies even though Jordan agreed to the Terms after she purchased the pressure cooker.

Having determined that the arbitration agreement between Jordan and Best Buy is valid and that the dispute is within the scope of the agreement, the Court grants Best Buy's motion to compel arbitration as to Jordan. 9 U.S.C. § 4; *see also 3M Co.*, 542 F.3d at 1198.

---

[4] Plaintiffs point to language in the clause that specifies that agreeing to the Terms for My Best Buy membership binds the member to arbitration for "disputes that arose before your enrollment" as evidence that Best Buy did not intend to apply the arbitration agreement retroactively to non-members. (Doc. No. 48 at 15-16.) While the Court agrees that specifying retroactive application for only My Best Buy membership is confusing, the Court does not find that to be enough evidence to overcome the strong presumption of arbitrability, given the rest of the clause's broad language.

## II.   Motion to Strike Class Allegations

### A.   Legal Standard

Rule 12(f) provides that the Court may, on its own or on motion made by a party, "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). This Rule applies to motions to strike portions of a pleading. *See VanDanacker v. Main Motor Sales Co.*, 109 F. Supp. 2d 1045, 1047 (D. Minn. 2000). A district court enjoys "liberal discretion" under this rule. *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007). However, striking a party's pleadings "is an extreme measure," and motions to strike under Rule 12(f) "are viewed with disfavor and infrequently granted." *Stanbury Law Firm, P.A v. Internal Revenue Serv.*, 221 F.3d 1059, 1063 (8th Cir. 2000).

Class certification issues are a reason to strike pleadings under Rule 12(f), even if the class has yet to be certified. The Eighth Circuit has held that "a district court may grant a motion to strike class-action allegations prior to the filing of a motion for class-action certification." *Donelson v. Ameriprise Fin. Servs., Inc.*, 999 F.3d 1080, 1092 (8th Cir. 2021). This inquiry is not a decision on certification but merely a review of if the class is clearly uncertifiable as to avoid unnecessary litigation. *Id.* If it is "apparent from the pleadings that the class cannot be certified" and where "permitting such allegations to remain would prejudice the defendant by requiring the mounting of a defense against claims that ultimately cannot be sustained," a court should strike the class allegations. *Id.*

13

### B.   Jordan's Class Allegations

As discussed above, Jordan is subject to Best Buy's Terms. Those Terms include a clear prohibition on class actions. (*See* Mattox Decl. ¶ 4, Ex. A at 5.) The FAA requires courts to enforce arbitration agreements according to their terms. 9 U.S.C. § 2. Therefore, the Court grants the motion to strike Jordan's class allegations.

### C.   Walsh's Class Allegations

Walsh did not partake in any of the three actions to agree to Best Buy's Terms and is therefore not subject to the Terms. Therefore, the Court must analyze whether the class clearly cannot be certified.

Federal Rule of Civil Procedure 23 governs class certification. A party seeking class certification must meet the requirements of Rule 23(a) by establishing that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). The parties dispute the second and third requirements of Rule 23(a), commonality and typicality. In addition, plaintiffs must satisfy one of the three subsections of Rule 23(b). *See Stuart v. State Farm Fire & Cas. Co.*, 910 F.3d 371, 374 (8th Cir. 2018). A plaintiff bears the burden to show that a class could be certified. *Ebert v. General Mills, Inc.*, 823 F.3d 472, 477 (8th Cir. 2016).

A class has sufficient commonality under Rule 23(a)(2) if "there are questions of law or fact common to the class." To demonstrate commonality, a plaintiff must show

14

that the claims "depend upon a common contention" that "is capable of classwide resolution," such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). A single common question will do for purposes of Rule 23(a)(2). *Id.* at 359. Here, all proposed class members have allegedly suffered the same injury and determination of Best Buy's liability for such is central to each claim. Best Buy challenges the commonality, arguing that there is no individual basis to assess liability. However, this challenge is more appropriately categorized as a challenge to Rule 23(b)(3)'s requirement that such common questions predominate over individual inquiries, not as a challenge to Rule 23(a)(2)'s commonality requirement. *See Midwestern Mach. v. Nw. Airlines, Inc.*, 211 F.R.D. 562 (D. Minn. 2001). The Court therefore finds that the proposed class is not clearly uncertifiable under Rule 23(a)(2)'s commonality requirement.

Rule 23(a)(3) requires that "the claims of defenses of the named plaintiffs emanate from the same event or are based on the same legal theory as the claims of the class members." *Id.* at 569. Best Buy points to the fact that some proposed class members will be subject to the Terms' arbitration clause to argue that Walsh is not typical of the class. While there is no clear precedent on the effect of arbitration clauses on class typicality in the District of Minnesota, other district courts have denied motions to strike in similar situations. *See, e.g.*, *Bright v. Brookdale Senior Living, Inc.*, No. 19-cv-374, 2021 WL 6496799, at *16 (M.D. Tenn. Mar. 12, 2021); *Collins v. Pearson Educ., Inc.*, 721 F. Supp. 3d 274, 290 (S.D.N.Y. 2024). Therefore, the Court finds that the proposed class is

not clearly uncertifiable under Rule 23(a)(3)'s typicality requirement at this point in the litigation.

Plaintiffs bring the proposed class pursuant to Rules 23(b)(2) and 23(b)(3). (Am. Compl. ¶ 59.) Best Buy challenges the potential of certification under both. Rule23(b)(2) applies when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). To certify a class under Rule 23(b)(2), the class claims must be cohesive. *In re St. Jude Med., Inc.*, 425 F.3d 1116, 1121 (8th Cir. 2005). Cohesion under Rule 23(b)(2) is a more stringent requirement than commonality under Rule 23(a)(2) and predominance and superiority under Rule 23(b)(3). *E.g.*, *id.* "The existence of a significant number of individualized factual and legal issues defeats cohesiveness" and warrants a class uncertifiable under Rule 23(b)(2). *Donelson*, 999 F.3d at 1093. "A significant number of individualized factual and legal issues exist 'where members of a proposed class will need to present evidence that varies from member to member' such that the class claim is not 'susceptible to generalized, class-wide proof.'" *Id.* (quoting *Ebert*, 823 F.3d at 479). Best Buy argues that the need for individual inquiries into whether a potential plaintiff has completed one of the three actions to agree to the Terms makes the class uncertifiable because the plaintiffs are not susceptible to generalized, class-wide proof. However, looking up a potential plaintiff in multiple systems simply to check their online purchase history does not rise to the level of a "significant" individualized inquiry.

Comparison to cases in which the court found such an issue makes that clear. For example, in *In re St. Jude*, the relief required a look into each patient's individual medical history to determine the need for continued medical monitoring. *In re St. Jude*, 425 F.3d at 1122. Here, Best Buy need only look at a high level for a name in online databases to see if that person ever completed a purchase on BestBuy.com or signed up for a My Best Buy membership. As another example, in *Ebert*, relief required a factual inquiry into the presence and cause of the vapor contamination of each injured plaintiff's property. 823 F.3d at 479, 481. Here, the alleged economic injury is the same for all potential plaintiffs. The Court fails to see how Best Buy's predicament rises to the level of significant individualized inquiry necessary and therefore finds that the class could be certified under Rule 23(b)(2). It would be inappropriate for the Court to strike class allegations as to Walsh at this stage.

Because certification under Rule 23(b)(2) is a higher bar than under Rule 23(b)(3), the Court need not consider potential certification under Rule 23(b)(3). The Court is satisfied that the proposed class is not clearly uncertifiable under Rule 23(b). The Court denies Best Buy's motion to strike class allegations as to Walsh.

## CONCLUSION

The Court finds that the arbitration agreement between Best Buy and Jordan is valid and applies to the dispute at hand. Best Buy's motion to compel arbitration of Jordan's claims is granted. The Court further finds that Jordan is subject to the class action waiver and therefore cannot bring her claims in front of the Court. Best Buy's motion to strike the class allegations as to Jordan is granted. The Court finds that the

class allegations brought by Walsh are not clearly uncertifiable, so his claims may stand for now. Best Buy's motion to strike the class allegations as to Walsh is denied.

## ORDER

Based upon the foregoing and the record in this case, **IT IS HEREBY ORDERED** that:

1. Defendant Best Buy's motion to compel arbitration of the claims raised by Plaintiff Jewel Jordan (Doc. No. [31]) is **GRANTED**.

2. Defendant Best Buy's motion to strike the class allegations of Plaintiff Jewel Jordan (Doc. No. [31]) is **GRANTED**.

3. Defendant Best Buy's motion to strike the class allegations of Plaintiff Michael Walsh (Doc. No. [31]) is **DENIED**.

4. This matter is **STAYED** as to Plaintiff Jewel Jordan's individual claims pending resolution via arbitration.

Dated:  February 21, 2025                         s/Donovan W. Frank
                                                  DONOVAN W. FRANK
                                                  United States District Judge